**Opinion filed November 24, 2021**



# In The

# Eleventh Court of Appeals

_____

## No. 11-21-00104-CV

_____

# IN THE INTEREST OF E.A., D.R., Z.A., AND A.R., CHILDREN

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 9831-CX**

## M E M O R A N D U M   O P I N I O N

This is an appeal from orders in which the trial court terminated the parental rights of the mother as to E.A., D.R., and Z.A. and appointed the mother as a mere possessory conservator of A.R.  The mother filed this appeal.[1]  On appeal, she presents three issues in which she challenges the sufficiency of the evidence to support the trial court's findings with respect to the termination of her parental rights as to E.A., D.R., and Z.A.  We affirm the orders of the trial court.

---

[1]We note that the parental rights of the children's various fathers were also affected by the trial court's orders.  However, none of the fathers filed an appeal.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2021). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that Appellant had committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (D) and (E). Specifically, the trial court found that Appellant had knowingly placed or knowingly allowed E.A., D.R., and Z.A. to remain in conditions or surroundings that endangered their physical or emotional well-being and that Appellant had engaged in conduct or knowingly placed E.A., D.R., and Z.A. with persons who engaged in conduct that endangered their physical or emotional well-being. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of E.A., D.R., and Z.A.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trial court is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

*Evidence Presented at Trial*

As is often the case in a parental termination proceeding, the children were removed from their parents because of the use of illegal drugs by at least one of the parents. This case began due to an incident involving D.R. and Z.A., who were both under the age of three at the time. A passerby found D.R. and Z.A. in the middle of a busy street and called the police. The police responded and observed marihuana paraphernalia in the home. An investigator for the Department of Family and Protective Services contacted Appellant about the incident and about drug use in the home.

Appellant denied any drug use. However, hair follicle testing conducted about a month after the intake showed that Appellant tested positive for methamphetamine

at a level of 43,446 pg/mg and also tested positive for amphetamine and marihuana. Z.A., Appellant's youngest child, tested positive for methamphetamine at a level of 8,003 pg/mg. D.R. tested positive for methamphetamine at a level of 3,512 pg/mg and cocaine at a level of 2,470 pg/mg. After the Department received the results of the drug tests, all of Appellant's children were removed from her care.

Appellant participated in the preparation of a family service plan, which was subsequently made an order of the trial court. Appellant complied with her family service plan in all but one respect: the drug screens. The record shows that Appellant attended an inpatient rehabilitation program and that her subsequent urine tests were negative for drugs; however, the results of her hair follicle tests continued to be positive for drugs.

Although Appellant was present at trial, she did not testify. The permanency case manager testified that Appellant and her children had a great bond, that she loved them, and that they loved her. The case manager further testified that "having more visit times with them and possibly moving to unsupervised [visits] would be a good positive." The case manager initially indicated that Appellant had been able to demonstrate long-term sobriety, but she subsequently acknowledged that the barrier to Appellant's reunification with the children was Appellant's "unclean hair follicle."

At the time of trial, A.R. was thirteen years old and had been placed with a maternal aunt for one year. A.R. was happy in her aunt's home and was doing well there, but she nonetheless wished to be returned to Appellant. Because of A.R.'s age and maturity and her desire to be returned to Appellant, the Department did not seek to terminate Appellant's parental rights with respect to A.R. Instead, the Department's goal for A.R. was for her maternal aunt to be her permanent managing conservator, without terminating the rights of Appellant or A.R.'s father. The maternal aunt agreed to be A.R.'s permanent managing conservator. The maternal

aunt testified that she believed it would be in A.R.'s best interest to continue to live in the maternal aunt's home. The CASA volunteer also testified that it would be in A.R.'s best interest to remain with her maternal aunt.

E.A. was eight years old at the time of trial. She had been placed with a paternal aunt—the same aunt with whom E.A. had been placed each time the children were removed from Appellant's care in the past. As a result, E.A. had practically been raised by her paternal aunt. E.A. was thriving in her aunt's home and was very happy there. The Department's goal for E.A. was for her parents' parental rights to be terminated and for her to be adopted by the paternal aunt with whom she had been placed for much of her life. The paternal aunt and her husband hope to adopt E.A. The case manager believed that termination of Appellant's rights would be in E.A.'s best interest. The CASA volunteer believed that adoption by the paternal aunt would be in E.A.'s best interest.

D.R. was four years old at the time of trial. He was initially placed with A.R. and Z.A. in their maternal aunt's home. However, approximately two weeks prior to trial, D.R. was moved to foster care because the maternal aunt informed the Department that she could no longer care for the youngest two children: D.R. and Z.A. The Department's goal for D.R. was termination of both parents' parental rights and "unrelated adoption." The case manager believed that termination of Appellant's rights would be in D.R.'s best interest. The CASA volunteer believed that the Department's goal for D.R. was in D.R.'s best interest.

Z.A. was three years old at the time of trial. Like D.R., Z.A. was initially placed with his maternal aunt but was moved to foster care approximately two weeks prior to trial. Z.A.'s father had only recently been identified and, thus, had not been able to complete the services that would be required for reunification with Z.A. The Department's goal for Z.A. was termination of Appellant's parental rights and—if

the father successfully completes the services required by his family service plan—reunification of Z.A. with his father. The case manager believed that termination of Appellant's rights would be in Z.A.'s best interest. The CASA volunteer believed that the Department's goal for Z.A. was in Z.A.'s best interest.

The CASA volunteer testified that Appellant had not been able to create a safe and stable environment for her children and that she would be concerned if the children were returned to Appellant. According to E.A.'s paternal aunt, Appellant had not been able to provide stability for the children since E.A. was born. The case manager testified that the Department had previously been involved with Appellant and her children multiple times but that, each time, the children had ultimately been returned to Appellant. The case manager further testified that, at this point, it would be in the children's best interest to have a stable environment. The Department planned for the sibling visits to continue and for those visits to be monitored by the Department even after the termination of Appellant's parental rights.

*Analysis*

*1. The evidence was sufficient to show that Appellant endangered her children.*

In her second and third issues, Appellant challenges the legal and factual sufficiency of the evidence to prove grounds (D) and (E). We need only address the third issue in this opinion—her challenge to the trial court's finding under Section 161.001(b)(1)(E). *See In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either of these grounds); *see also In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021) (acknowledging that one predicate finding—coupled with a best-interest finding—is enough to uphold the judgment on review).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 34 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct need not be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of endangerment. *Id.*

Based upon evidence of Appellant's use of methamphetamine, D.R. and Z.A. being exposed to drugs such as methamphetamine and cocaine while in Appellant's care, and D.R. and Z.A. being found wandering in the middle of a busy street without adult supervision, we conclude that the trial court could have found by clear and convincing evidence that Appellant had engaged in conduct or knowingly placed her children with persons who engaged in conduct that endangered the children's physical or emotional well-being. We hold that the evidence is legally and factually sufficient to uphold the trial court's finding as to Appellant under subsection (E). Accordingly, we overrule Appellant's third issue. Because only one statutory ground is necessary to support termination and because we have upheld the trial court's finding as to subsection (E), we need not reach Appellant's second issue—her challenge to the finding under subsection (D). *See* FAM. § 161.001(b)(1); *N.G.*, 577 S.W.3d at 234–35; *see also* TEX. R. APP. P. 47.1.

*2. The evidence was sufficient to show that termination of Appellant's parental rights was in the best interest of E.A., D.R., and Z.A.*

In her first issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights would be in the best interest of E.A., D.R., and Z.A. Appellant asserts that it was not in the children's best interest to separate them. She also asserts that the uncertainty of D.R.'s and Z.A.'s situations weighed against termination. Under the circumstances in this case, we cannot agree with Appellant's contentions.

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *A.B.*, 437 S.W.3d at 503. Giving due deference to the trial court, we hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in E.A.'s, D.R.'s, and Z.A.'s best interest. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of E.A., D.R., and Z.A.; the emotional and physical needs of these children now and in the future; the emotional and physical danger to these children now and in the future; the parental abilities of those involved; the plans for these children by the Department; the acts previously committed by Appellant that endangered her children; Appellant's history with the Department; Appellant's continued drug use; and the instability of Appellant's situation, we hold that the evidence is legally and factually sufficient to support the finding that termination of Appellant's parental rights is in the best interest of E.A., D.R., and Z.A. *See id.* Based on Appellant's history with the Department and the testimony of the witnesses at trial, the trial court could have found by clear and convincing evidence that Appellant was either unable or unwilling to provide stability for her children. We defer to the trial court's finding

as to the children's best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot hold in this case that the finding as to best interest is not supported by clear and convincing evidence.  We overrule Appellant's first issue.

*This Court's Ruling*

We affirm the orders of the trial court.


W. BRUCE WILLIAMS
JUSTICE


November 24, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.